## CHARLESTON.

STATE *v.* McDERMITT *et als.*

Submitted March 18, 1913.    Decided April 15, 1913.

1. INTEREST—*Accounts of Retiring Sheriff—Demand.*
   Interest on balances runs against a retiring sheriff. only from the date of a lawful demand on him for payment to his successor.    (p. 293).

2. PAYMENT—*Application—Balance Due from Retiring Sheriff.*
   When a sheriff receives payments from his predecessor on balances against him on settlement, and through ignorance of law or fact applies them, or any portion of them, to other accounts than those directed by him, and afterwards receives other payments on balances, without direction as to their application, the court, on equitable principles, in a suit by a county court against such ex-sheriff and the sureties on his official bond, for balances due it, and against which such first payments were so misapplied, should apply sufficient of such subsequent payments not otherwise specifically appropriated on the accounts on which the first payments were misapplied to make up the amounts thereof, so as not to disturb settled accounts of the sheriff receiving such payments. and to do justice to all parties concerned.    (p. 293).

Error to Circuit Court, Mason County.

Action by the State, for use of the County Court of Mason County, against J. O. McDermitt, Sheriff, and others. Judgment for defendants, and plaintiff brings error.

*Reversed and Rendered.*

*B. H. Blagg,* and *John E. Beller,* for plaintiff in error.

*S. P. Bell* and *Sommerville & Sommerville,* for defendants in error.

MILLER, JUDGE:

This is an action for the use of the county court of Mason County, against McDermitt, late sheriff, and the sureties on his official bond, to recover $37,585.05, alleged to be due the county from McDermitt on settlement.

By agreement of the parties the case was referred to a commissioner to state an account, and such an account was stated, in two ways, on the different theories of the parties. On the theory that all payments, aggregating $29,535.26, made by McDermitt to Austin, his successor, were properly applicable on McDermitt's indebtedness to the county court, the commissioner reported a balance due the county, including principal and interest, as of the date of filing his report, of $8,316.86, or if the court should be of opinion, that interest should run from February 28, 1910, instead of July 7, 1911, the date from which interest had been calculated, that the interest would be $924.99, instead of $267.07, included in the balance found.

On the theory that $10,963.75, of the payments so made should have been applied as they in effect, if not in fact, were applied on account of McDermitt's indebtedness to the boards of education of the several school districts of the county, the commissioner reported as due the county court, principal and interest, if interest should run from July 7, 1911, the sum of $19,-633.60, but if from February 28, 1910, then the balance would be $21,187.82.

By agreement of the parties the case was tried by the court in lieu of a jury. The only points in controversy on the trial, raised by exception to the report of the commissioner, were as

to the application of said .$10,963.75, and the question of interest to which we have referred.

One fact, as reported by the commissioner, is, that the county court, first at a special term held February 28, 1910, and again at a regular term held July 7, 1911, entered an order requiring McDermitt to pay over to his successor the balance due the county. If as claimed the first order entered at the special term, not covering such business, is void, the latter, made at a regular term, is conceded to be valid. The controversy as to the date from which interest should be calculated arises out of the alleged invalidity of the order of February 28, 1910. Interest runs against the sheriff only from the date of a lawful demand on him for payment to his successor. *State* v. *Keadle,* 63 W. Va. 645. Another fact also reported by the commissioner is that none of the boards of education of said county ever made any order requiring McDermitt to pay the balance due them to Austin.

The court below found defendants were entitled to have said sum of $10,963.75, applied as a credit on McDermitt's indebtedness to the county court, and gave judgment for plaintiff against defendants, for $8,262.00, with interest and costs, the balance found due, after crediting them also with $1205.00, paid by McDermitt since the institution of this suit. To this finding and judgment, the present writ of error applies.

On the principal question, the application of payments, the evidence shows payments by McDermitt to Austin, on and after February 28, 1910, and for which he took receipts, with stipulations as follows: February 28, 1910, $12,086.97, "to be applied to the balances due from him from the various funds County and Road; May 16, 1910, $1,100.06, "to be credited on the various funds due from him"; May 6, 1910, $1,500.00, "for payment on Robinson, Graham and Waggener Road Fund, up to May 30, 1910"; September 21, 1910, $3,000.00, "for which I am to credit him as Ex-Sheriff of Mason County"; January 3, 1911, $1,705.22, "to be credited to him on the account of his settlements as late sheriff"; April 26, 1911, $848.23, "in various orders to be credited on his indebtedness to the County and Road Funds"; June 3, 1911, $9,294.78, "to be credited to him on account of his various funds as Sheriff of Mason County, West Virginia."

The commissioner based his report mainly on the fact that the boards of education had never made orders requiring McDer-

mitt to make payments to Austin, but the record of the settlements of Sheriff Austin, with these boards, for the first year of his term, shows that he was charged with the balances due them respectively, according to the last preceding settlements with McDermitt, and several of these accounts show that after thus charging Austin with these balances and with the levies for the year, the accounts were either overdrawn or would have been overdrawn but for these credits, so that in those cases the boards of education had actually used the money so credited and charged. Sections 139, 140 and 141, chapter 45, Code Suppl. 1909, require settlements by the sheriff directly with the boards of education of each district, and prescribe how those settlements shall be made, and section 142, of the same chapter, requires additional settlements with the county court for school moneys.   So that it appeared to the commissioner and to the court on the trial, that although no orders had been made by these boards of education requiring McDermitt to pay Austin, each had accepted credit in settlement and in some cases actually used all and more than all the money so paid.   Were they not thereby forever estopped from denying the legality of such payments?   We think so.   Acceptance of the credits in this way was justification to Austin for receiving payment and amounted to ratification of payments by McDermitt, requiring no subsequent order on the latter to pay.

But what about the right of McDermitt, as sheriff, to make application of payments?   It is argued, without reference to any legal principles we know of, or to any adjudged cases, that being a public officer and the money being public money, he had no right to direct its application.   Speaking for myself, I would think he had such right, but it is probably not necessary to decide this question.   See Throop on Public Officers, section 218, and 4 Am. & Eng. Ency. Law & Pract. 1104, 1105, which at least imply such authority.   If McDermitt had such right, of course Austin could not make a different application.   But there were payments more than sufficient in amount to make up the sums credited to the accounts of the school boards, and as to which the receipts make no specific application, and as to which, according to all rules, the creditor has the right to make the application.

The only evidence outside the receipts showing application of payments by McDermitt is his oral testimony.   When asked whether in making payments to his successor, he did not state how

he wanted them applied, and in most cases take receipts from
him, showing how these payments should be applied, his only
answer was: "I think so, yes sir." But some of these receipts
do not make application, and the witness does not state, outside
the receipts, what his directions were, if any, which he only
thinks he gave. Now as to the payments of May 16, 1910, made
before Austin's first settlement in August, 1910, that of Sep-
tember 21, 1910, that of January 3, 1911, and the one of June 3,
1911, no applications were made, except that they were to be
credited generally on McDermitt's indebtedness to the various
funds, or on account of his settlements as late sheriff. Tech-
nically speaking we may say that neither Austin nor the county
court, or the boards of education, had distinct legal right to apply
any of the payments made prior to July, 1910, to the indebtedness
to the several boards of education, unless it be that of May 16,
for $1100.06, the receipt in that case stipulating "to be credited
on the various funds due from him"; this might mean *pro rata*
on all. We do know, however, from the receipts, which are not af-
fected by any other evidence, that subsequent payments were made
by McDermitt largely in excess of the sums erroneously credited
to the boards of education, and as to which no application was
made by the debtor, and out of which Austin might have corrected
his error in the first instance. Should not the court below on
equitable rules applied even in courts of law, have allowed the
credits to the boards of education to stand in lieu of others, which
Austin would have had the right to make out of these subsequent
payments? Evidently the applications of the first payments
were made by mistake of fact or law, or both. But being a public
officer, and in as much as Austin had paid out on orders of the
school boards much if not all the money so erroneously credited
to them, and in as much as applications of the last payments had
not then been made, the court below, we think, should have made
such application thereof as would have been just under all the cir-
cumstances, either by allowing the original credits to stand in
lieu of the credits which might have been so made out of the sub-
sequent payments, or to have re-stated the account, crediting Mc-
Dermitt and charging the county court with the first payments,
and crediting McDermitt and charging the boards' of education
with sufficient of the last payments not otherwise appropriated

.to close those accounts with him.    To have pursued the latter course would necessarily have subjected the parties and the court to much annoyance and trouble, wholly unnecessary for any purposes of doing right and justice to the parties.  For the general rule which we think applicable in such cases, see 4 Am. & Eng. Ency. Law and Pract. (3rd ed.) 1081, *et seq.;* 30 Cyc. 1240, text and notes on the Justice and Equity Rule.

We are of opinion, therefore, to reverse the judgment below and enter judgment here in favor of the plaintiff against defendants, McDermitt, principal, and the sureties on his official bond, for the sum of $19,874.44, with interest from July 2, 1912, till paid, and with costs in the circuit court, and in this Court in this behalf expended.

*Reversed and Rendered.*